**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAURICE SPEARMAN #158437,

        Plaintiff,                   Civil Action No. 04-72414
                                         District Judge Arthur J. Tarnow
                                         Magistrate Judge R. Steven Whalen

v.

RAY BOWERSON, SARAH BEARSS,
BARBER MEAGHER, BARBER RANGER,
and THOMAS BIRKETT,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

      Before the Court is Defendants Ray Bowerson, Sarah Bearss, Barbara Meagher, Barbara Ranger, and Thomas Birkett's Motion to Dismiss and Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 12(b) and 56(b), filed September 13, 2004 (Docket no. 15), which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  I recommend that the motion to dismiss be GRANTED, as to Defendants Bearss, Bowerson, and Meager, subject to Fed. R. Civ. P. 56(b) and DENIED as to Defendants Ranger and Birkett

## I. FACTUAL BACKGROUND

Plaintiff, presently incarcerated at Standish Maximum Facility in Standish, Michigan, brought suit pursuant to 42 U.S.C. § 1983 on July 6, 2004, alleging that Defendants denied him equal protection by terminating his job as a law library clerk. Plaintiff further alleges that Defendants violated his constitutional rights by refusing to remove his designation as a homosexual predator. Plaintiff seeks injunctive and monetary relief. *Complaint* at 10.

Plaintiff worked previously as a clerk in the prison's law library. In June, 2003, officers discovered three library books in Plaintiff's possession during a shakedown of his cell. Plaintiff, who maintained that he had properly checked out the books, was subsequently found guilty of misconduct following an administrative hearing.. Defendant Bearss, supervising librarian, recommended the termination of Plaintiff's library job. On July 15, 2003, Defendant Bowerson, Classification Director, accepted Bearss' recommendation, firing Plaintiff. Defendant Barbara Meagher, Deputy Warden, who either approves or denies all "Position of Trust" work assignments, including Plaintiff's former position, found that he was not eligible for reinstatement.

Plaintiff subsequently applied for removal of his homosexual predator designation, which was placed in his file following a 1998 incident. Defendant Barbara Ranger recommended against removing Plaintiff's designation. Defendant Birkett, Warden of the Standish facility, accepted her recommendation on March 30, 2004.

## II. STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. ANALYSIS

Plaintiff argues that Defendant Bearss, acting supervisor of the prison's law library, violated his constitutional rights by treating him differently than similarly-situated white inmates accused of similar offenses. *Complaint* at ¶ 7. He alleges that a white library employee, "Anderson," was found not guilty of a major misconduct ticket for theft, and was reinstated in his position with back pay. *Id*. at ¶ 13. Plaintiff states that around the same time he lost his job, another white prisoner, "Mikko," was found guilty of a similar offense, but Bearss treated them unequally by indicating that she did not recommend Plaintiff's reinstatement, but omitted the same recommendation on Mikko's form. *Id.* at ¶¶ 20-22. Plaintiff also argues that a fourth library employee, "Simmons," also white, was caught "attempting to smuggle contraband" to segregated prisoners, but did not receive a major misconduct ticket. *Id*. at 23.

Plaintiff contends that Defendants Bowerson and Meagher acted with discriminatory intent by accepting Bearss' recommendation for termination, and denying his request to be reinstated. Plaintiff alleges that a white prisoner eventually filled his position. *Id.* at ¶24.

Plaintiff also argues Defendants Ranger and Birkett denied him equal protection by refusing to remove his designation as a homosexual predator. *Id.* at ¶ 25. He faults Defendant Ranger for the inclusion of records related to his termination from his library jobs which he deems irrelevant to his homosexual predator designation. *Id.* at ¶¶ 26, 28. He maintains that he has not received any sexually related misconducts during his twenty-year incarceration other than a determination resulting from a 1998 incident which he asserts was

-4-

"erroneously" decided, maintaining that Ranger made her recommendation to deny removal of his designation in retaliation for a lawsuit he filed against Ranger's co-worker *Id.* at ¶30. He claims that Defendant Ranger told him that Defendant Birkett declined to remove his designation because he filed lawsuits against officers and "griev[ed] everything." *Id.* at 33. He also implies that Defendant Birkett's refusal to remove his designation was influenced by his concern that MDOC officials in Lansing had been alerted to alleged improprieties committed at the prisoners' store. *Id.* at 35. Plaintiff notes that his continuing status as a sexual predator bars him from transfer to a lower security level facility. *Id.* at 36.

### A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S.C.A. Const. Amend. XIV § 1.

"The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005); *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997). The Equal Protection clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Id.*; *Vacco*, at 521 U.S. at 799. "In order for Plaintiff's claim to survive Defendants' motion, Plaintiff had to allege that he was denied equal protection of the law based upon an unjustifiable standard such as race, religion, or other arbitrary classification . . . . [A] person bringing an action under the Equal Protection

Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Bass v. Robinson,* 167 F.3d 1041, 1050 (6th Cir. 1999).

### 1.     **Defendant Bearss, Bowerson, and Meagher**

Plaintiff alleges that Defendant Bearss practiced racial discrimination by recommending his termination after Plaintiff was found guilty of stealing library books. He states although Bearss checked a box on a form statement indicating that he should not be permitted to return to his job, Bearss omitted such a mark on a white prisoner's (Mikko's) termination form that she filled out around the same time. He states that he received harsher treatment than two additional white library workers (Simmons and Anderson), who were also accused of dishonesty.

Defendant Bearss submitted a seven page affidavit to the Court which states in detail why Anderson Mikko, and Simmons' situations were not analogous to Plaintiff's termination experience. *Defendants' Motion to Dismiss* at Exhibit A.

She states that during a shakedown, Anderson was found in possession of alleged contraband, including pens, refills, page protectors, file folders w/metal tabs, and ribbon ink. *Id*. at ¶ 8. However, Defendant Bearss' affidavit states that she had given Anderson the pens and refills in conjunction with a work assignment and that the other items found on Anderson during the shakedown were not attainable from library. She states that accordingly, she interceded on Anderson's behalf and he was found not guilty of the misconduct ticket, making him eligible for reinstatement with back pay.

Bearrs explains further that Mikko's situation was inapplicable to Plaintiff's treatment, since although Mikko was discovered with the same books as Plaintiff, unlike Plaintiff, he acknowledged his wrongdoing and waived a hearing. *Id.* at ¶ 12.  Further, Bearss' states that her failure to check one of two boxes either recommending or discouraging Mikko's reinstatement, was an "oversight," testifying that she did not want him reinstated due to his violation of "the trust of the position." *Id.* at ¶ 13.  Mikko was not, in fact, reinstated.

Bearss states that her treatment of prisoner Simmons is also distinguishable from Plaintiff's case. *Id.* at ¶ 13.  Bearrs states that after staff found tobacco on a library cart, an officer assembled all of the library clerks, then warned them that they would all be terminated if the guilty party failed to confess. *Id.* at ¶ 15.  Simmons, then acknowledged his guilt - apparently to spare his co-workers.  Simmons job was terminated, but the officer declined to write a ticket, due to the absence of any recent misconduct by Simmons and his acceptance of responsibility. *Id.*   Bearss states that although Plaintiff places great significance on Simmon's current position of Clerk for the Recreation Director, which allows him to work in the same building as the law library, Simmon's new position, unlike his job at the library, is not "a position of trust," and states further that although he works in the proximity of the library, "the [l]ibrary is in an entirely separate room," and that his new work does not entail performing library duties. *Id.* at 17.

Defendant Bearss  presentation of a non-discriminatory and rational basis for her actions reasons complies with *Vacco, supra,* 521 U.S. at 799, 117 S.Ct. 2293,  which

-7-

cautioned against what can be stated as comparing the proverbial "apples to oranges." Plaintiff fails to establish racial animus in comparing his situation with two inmates, who unlike himself, acknowledged their responsibility and a third who was exonerated of wrongdoing.

Likewise, Defendant Bowerson's affidavit presents non-racial reasons for accepting Bearrs' recommendation to terminate Plaintiff, stating that his job duties include terminating "prisoners who violate the trust or rules inherent with each assignment." *Defendants' Motion to Dismiss,* Exhibit F at ¶4. Bowerson states that Plaintiff's failure to recapture his previous position is attributable to his "violation of the trust" of his position and his lack of a GED. *Id.* at 7.[1] Bowerson notes that Plaintiff previously received a waiver allowing him to hold his library position provided that he remained enrolled in school. *Id.* Defendant Bowerson provides a rational basis for Plaintiff's termination and failure to achieve reinstatement.

Defendant Meagher, Deputy Warden, also provided an affidavit, stating that although Plaintiff remained in the "applicant pool" for his old position, she had denied his reinstatement based on his violation of his "trusted position" and his lack of a GED, pursuant to the prison's policy manual. *Defendants' Motion to Dismiss*, Exhibit E at ¶¶ 7, 10. She stated that her decision to deny Plaintiff's request for reinstatement was consistent with the

---

[1] Defendant Bowerson cites PD 05.01.100, Prisoner Program Classification which states that "Position of Trust," such as Plaintiff's library position must be approved by the Deputy Warden based on misconduct history, work and school reports, or behavior which precludes such employment due to safety and security concerns. Defendants' Motion to Dismiss, Exhibit F at ¶ 8.

prison's policy to "hire the inmate [she] believe[d] to be best suited for the position and available in the applicant pool at that time," stating that her decision was applied without respect to race. *Id* at ¶4. Similarly, Defendant Meagher has presented ample, non-discriminatory reasons for declining Plaintiff's application for his library job.

  2.  **Defendants Ranger and Birkett**

Plaintiff alleges that Defendants Birkett and Ranger deprived him of equal protection by declining to remove his homosexual predator designation, thus preventing him from being eligible for transfer to a lower security level facility. *Opposition to Defendants' Motion to Dismiss* at 7.**²**

The court in *McFarland v. Luttrell* 51 F.3d 272, 1995 WL 150511, 2 (6th Cir. 1995); *quoting Olim v. Wakinekona,* 461 U.S. 238, 245 (1983) found that "[t]here is no inherent constitutional right to placement in any particular prison, 'or in a particular security classification.'" *Id.; Montanye v. Haymes,* 427 U.S. 236, 242 (1976). More fundamentally,

---

  ²Although Plaintiff expresses his continued homosexual predator designation as an equal protection violation, such a classification is regularly construed as a procedural due process violation.. "Plaintiff's designation as a "homosexual predator" is nothing more than a security classification used by the prison. Because Plaintiff has no liberty interest in a particular security level or classification, he fails to state a due process claim." *Watkins v. Curtin,* 2005 WL 1189602, 2 (W.D.Mich. 2005); *Sandin v. Conner,* 515 U.S. 472, 486, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Moreover, the Plaintiff's allegations fall far short of what would be required to show a violation of Fourteenth Amendment substantive due process. "A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to 'shock the conscience' of the court." *Rimmer-Bey v. Brown*, 62 F.3d 789, 791, fn. 4 (6th Cir. 1995), quoting *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

the court found the plaintiff's equal protection claim "frivolous because it likewise asserts infringement of a legal interest which clearly does not exist. It is incumbent on one asserting an equal protection claim to prove the existence of some purposeful discrimination." *Id.*

Similarly, this Court cannot grant relief to Plaintiff based on his assertion that Defendants Ranger and Birkett violated his equal protection claims by preserving his homosexual predator designation. Unlike Plaintiff's allegation that he was denied a library job based on race, which he supports (albeit superficially) with statements that white employees were treated favorably, Plaintiff's equal protection claims against Ranger and Birkett fail to allege that he was treated any differently than a similarly-situated prisoner of a different race or class. "[C]ourts will not look with favor on complaints which, trading on mere conclusory charges, fail to set out the specifics of a tenable claim." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506 (1st Cir. 1987). Plaintiff's Equal Protection claims against Defendants Ranger and Birkett are subject to dismissal pursuant to Fed R. Civ. P. 12(b)(6).

### C.     Retaliation

Plaintiff further alleges that Defendants Ranger and Birkett's decision to preserve his homosexual predator designation resulted from his filing of lawsuits and grievances against the prison. Plaintiff claims that shortly after his request was denied, Defendant Ranger confirmed that his failure to achieve the designation's removal was attributable to his grievance and lawsuit filings. *Complaint,* at ¶ 33. Plaintiff claims that Defendant Ranger acknowledged in February, 2002 that Defendant Birkett regularly removed homosexual

predator designations if the prisoner had subsequently refrained from conduct that led to the designation. *Opposition to Defendants' Motion to Dismiss* at Exhibit 6.

In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."

Although, as discussed above, Plaintiff has failed to establish a viable Equal Protection claim, the *Thaddeus-X* court found that "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."*Id.* 175 F.3d at 386. Further, "a claim of retaliation for exercise of the constitutional right of access is cognizable under § 1983." *Id.* The *Thaddeus-X* court noted that "[t]he law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional," noting that "for these wrongs, too, § 1983 provides a remedy." *Id.* The Court must therefore decide whether there is a genuine issue of material fact as to Plaintiff's retaliation claims.

### 1. Defendant Ranger

#### i. Protected Conduct

Prison inmates have a constitutionally protected right of access to the courts, grounded

in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

Plaintiff has satisfied the first prong of the *Thaddeus-X* test, since the filing of a lawsuit challenging conditions of confinement under § 1983 is clearly constitutionally protected conduct.

### ii. Adverse Action

A retaliation claim does not require a showing that the plaintiff was actually inhibited or deterred from pursuing a legal action. Rather, an "adverse action" is defined as one which "is capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Thaddeus-X*, 175 F.3d at 398. The question of whether an action is adverse is an objective one which does not depend upon how the particular plaintiff reacted. *Bell v. Johnson,* 308 F.3d 594, 606 (6th Cir. 2002). While the *Thaddeus-X* court emphasized that "while certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential

actions." *Thaddeus-X*, 175 F.3d at 398. *See Siggers-El, supra* (although "ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct," it may nonetheless found to be adverse action under certain circumstances.) Similarly, Defendant Ranger's recommendation to continue Plaintiff's predator status, which according to Plaintiff, prevented him from eligibility for transfer to a lower-level security prison where he could receive rehabilitative services and "contact visits," qualifies as adverse action. *Opposition to Defendants' Motion to Dismiss* at 3.

### iii. Causal Connection

The third element of a retaliation claim is the showing of a causal connection between the protected conduct and the adverse action. *Thaddeus-X, supra*, 175 F.3d at 399. The subjective motivation of the defendants is material to this element. The plaintiff has the burden of establishing that his protected conduct (in the case, the filing of a lawsuit against MDOC officials) was a motivating factor behind any harm. Once the plaintiff meets this burden, the burden of production shifts to the defendant. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). If the defendant can then show that he would have taken the same action in the absence of protected activity, he is entitled to prevail on summary judgment. *Thaddeus-X*, at 399. The plaintiff does not have a heightened pleading requirement with regard to his initial showing of the defendant's motivation, but "it is obvious, of course, that bare allegations of malice would not suffice to establish a constitutional claim." *Crawford-El v. Britton*, 523 U.S. 574, 588, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998).

Defendant Ranger's affidavit, signed August 2, 2004, acknowledges that she recommended to Defendant Birkett that Plaintiff's petition to remove his homosexual predator designation be denied. *Complaint,* Exhibit G at ¶8. She denies that her recommendation was motivated by retaliatory motives, stating that she properly considered Plaintiff's recent law library dismissal in making her decision, and quotes a portion of MDOC Policy Directive (PD) 05.01.150 which she claims allows her to take into account "'the original basis for that designation and the conduct of the prisoner, since the designation. . .'" *Id.* at ¶9; *quoting* PD 05.01.150. She denied any knowledge of Plaintiff's lawsuit against a fellow employee at the time she made her recommendation, also refuting his allegation that she told him that his status would remain unchanged due to his grievances and lawsuits filed against her fellow employees. *Id.* at ¶13. She also claimed that subsequent to his law library termination, Plaintiff applied for jobs that "seldom became available," a fact that she states "is common knowledge among prisoners," alleging that Plaintiff "worked the system" to support his claims of unfair and prejudiced treatment. *Id.* at ¶¶ 5, 7. She also states that she does not remember telling Plaintiff in January, 2002 that Defendant Birkett looked favorably upon removing from predator status inmates who had been originally designated as a result of threats only and in the meantime had not engaged in the behavior that led to the designation. *Id.* at ¶12.

In response to Defendant Ranger's denial of retaliatory behavior, Plaintiff presents her response to a letter that he sent her in February, 2002 which asked her to confirm a recent conversation in which she stated that Defendant Birkett "was good" about removing predator

-14-

designations so long as the inmates had refrained from similar conduct since the original infraction. *Opposition to Motion to Dismiss* at Exhibit 6. Plaintiff's typewritten query includes a handwritten comment that Defendant Ranger allegedly penned over Plaintiff's original letter, stating "[b]asically this is correct." He refutes Defendant Ranger's claim that she was unaware of Plaintiff's lawsuit against a co-worker, noting that because he lacked funds to send his outgoing legal mail, he was obliged to submit his legal mail to her. *Id.* at 8. He states further that when Defendant Ranger asked him whether his lawsuit against the officer was criminal or civil, he volunteered the name of the defendant.[3]

Plaintiff's assertions of retaliation present a genuine question of material fact. I note that if his factual claim had been limited only to Defendant Ranger's alleged comment that Plaintiff's failure to achieve the removal of his predator status was attributable to his grievance and lawsuit filings, her alleged statement would have satisfied all three prongs of *Thaddeus-X,* in and of itself. However, aside from her alleged comments, the record presents several other reasons, suggesting a causal relationship between Plaintiff's lawsuits and his continued predator designation, to conclude that a question of fact remains.

First, Defendant Ranger's response to Plaintiff's January, 2002 letter, indicates that as a general policy, after prisoners completed a mandatory five year period in predatory status after the original incident, they would be granted the removal of the predatory label if they had not committed similar offenses since the their designation. One can reasonably

---

[3]*Spearman v. Kocot,* 02-73105.

infer that Ranger's refusal to forward a recommendation to remove the predatory status (even though Plaintiff had not been found to engage in similar behavior) represented an aberration of her understanding of the regular institutional procedure.

Second, although Defendant Ranger's affidavit denied any knowledge of Plaintiff's lawsuit against her co-workers, Plaintiff points out that during the relevant time period, because he was unable to afford postage, he was obliged to present his outgoing legal mail to Defendant Ranger.[4] He states that one day while submitting legal mail, in answer to her question "civil or criminal?" he told her that he had filed a lawsuit against her co-worker Kocot.

Third, although Defendant Ranger quotes a portion of PD 05.01.150. *Request For Removal of Designation* ¶2 in her affidavit, the same sentence, read in its entirety, states that the warden "[r]eviews basis of the designation and the conduct of the prisoner since the designation *to determine whether there is sufficient basis to believe that the prisoner no longer presents a threat as a predator.*" (emphasis added). Defendant Ranger's purported reasons for recommending retention of Plaintiff's predatory status (his improper use of library books leading to his job termination) appears to be unrelated to consideration of his continued threat as a predator. Similarly, Plaintiff's other misconducts tickets appear to be unrelated to his predator status. Defendant Ranger supported her recommendation to

---

[4]Plaintiff does not allege that Defendant Ranger had read contents of his legal mail, but notes his need to send out his mail via Ranger, apparently to refute her affidavit which claims that she was unaware of his legal actions against other institution employees.

Defendant Birkett by noting that Plaintiff "knock[ed] a milk carton on the floor and refus[ed] to pick it up," and "complained a lot." Significantly, Defendants acknowledge that since he made the threat that led to his designation in 1998, he has never been accused of engaging in predatory behavior.[5] Thus, Defendant Ranger's recommendation against removal of Plaintiff's designation represents a deviation from regular MDOC policy as well as her own understanding of the institution's usual policy as stated in her January, 2002 handwritten note.

Similarly, Defendant Ranger's argument that she is entitled to qualified immunity fails. Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), a state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. In *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002), the Sixth Circuit set forth a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) was there a violation of a constitutionally protected right;

---

[5]The original "homosexual predator" designation was based on an incident where Plaintiff told his cell mate to "fight or give up your ass." There is some ambiguity to this statement. Does it have a blatantly sexual connotation, or are these simply "fighting words?" Standing alone, the statement seems a rather thin justification for assigning a "homosexual predator" designation. Although the original imposition of that designation is not in issue in this case, the underlying conduct would not be expected to add significant weight to the decision to continue the designation, particularly given the absence of any other sexual misconduct. This further supports a finding that there is a genuine question of material fact as to whether the refusal to remove the designation was retaliatory.

(2) was that right clearly established at the time; and (3) has the plaintiff alleged and shown by sufficient evidence that what the official allegedly did was objectively unreasonable?

In *Siggers-El v. Barlow*, -- F. 3d -- 2005 WL 1503865, 8 (6th Cir. June 24, 2005) the Sixth Circuit stated that "[a] reasonable officer would certainly know that the right to access the courts is clearly established and that an officer would be liable if he retaliated against a prisoner for pursuing his right to access the court where the prisoner suffered an adverse action such that a reasonable person in the prisoner's position would be deterred from exercising his right," citing the oft-repeated and well-established principle that retaliating against a prisoner in response to his lawsuit filings states a constitutional violation. Significantly, while Defendants' dismissal motion discusses the theoretical grounds upon which a defendant can claim immunity, they do not argue that Plaintiff's retaliation claim fails to state a "clearly established right."

### 2. Defendant Birkett

For like reasons, Plaintiff appears to have established a question of material fact sufficient to survive summary judgment with regard to Defendant Birkett. Birkett's affidavit, which claims that his reasons for maintaining Plaintiff's predator status were non-retaliatory, contains the same "half-quote" found in Ranger's affidavit, stating that MDOC Policy Directive (PD) 05.01.150 allows him to consider "'the original basis for that designation and the conduct of the prisoner, since the designation. . .'" *Motion to Dismiss,* Exhibit D at ¶9, failing, of course, to include the rest of the sentence after "designation" which states "*. . .to determine whether there is sufficient basis to believe that the prisoner no longer presents a*

*threat as a predator.*" (emphasis added)  Although Plaintiff does not claim that Defendant Birkett stated that he denied his bid to remove his predator designation due to the grievances and lawsuits filed, Defendant Birkett's failure to remove the label despite the absence of related infractions - a deviation of MDOC practice - coupled with his access to knowledge of Plaintiff's legal actions against his institution's employees creates an inference that he, like Defendant Ranger, retaliated against Plaintiff by denying the removal of his predator status.

## IV. CONCLUSION

I recommend, for the reasons stated above, the motion to dismiss by Defendants Bowerson, Bearss and Meagher, be GRANTED and that this case be DISMISSED WITH PREJUDICE, as to Defendants Bowerson, Bearss and Meagher, pursuant to Fed.R.Civ.P. 56(b).  Further, I recommend that the motion to dismiss by Defendants Ranger and Birkett be DENIED.

Any objections to this Report and Recommendation must be filed  within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

          s/R. Steven Whalen
          R. STEVEN WHALEN
          UNITED STATES MAGISTRATE JUDGE

Dated:  July 21, 2005

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 21, 2005.

          s/G.Wilson
          Judicial Assistant